Case No. 24-6839

# In the United States Court of Appeals for the Ninth Circuit

RICHARD BLAIR,

*Plaintiff-Appellant*,

v.

AUTOMOBILI LAMBORGHINI SpA,

*Defendant-Appellee*.

On Appeal from
The United States District Court
For the District of Arizona
Case No. 2:22-cv-01439-ROS
The Honorable Judge Roslyn O. Silver

**ADDENDUM TO APPELLANT'S OPENING BRIEF**

Brett E. Lewis
Anna Iskikian
**LEWIS & LIN, LLC**
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
Brett@iLawco.com
Anna@iLawco.com

*Attorneys for Appellant Richard Blair*

## TABLE OF CONTENTS

Addendum Page

15 U.S.C. § 1114 ...................................................................................................3

15 U.S.C. § 1125 ...................................................................................................7

15 U.S.C.
United States Code, 2023 Edition
Title 15 - COMMERCE AND TRADE
CHAPTER 22 - TRADEMARKS
SUBCHAPTER III - GENERAL PROVISIONS
Sec. 1114 - Remedies; infringement; innocent infringement by printers and publishers
From the U.S. Government Publishing Office, www.gpo.gov

## §1114. Remedies; infringement; innocent infringement by printers and publishers

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

As used in this paragraph, the term "any person" includes the United States, all agencies and instrumentalities thereof, and all individuals, firms, corporations, or other persons acting for the United States and with the authorization and consent of the United States, and any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. The United States, all agencies and instrumentalities thereof, and all individuals, firms, corporations, other persons acting for the United States and with the authorization and consent of the United States, and any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.

(2) Notwithstanding any other provision of this chapter, the remedies given to the owner of a right infringed under this chapter or to a person bringing an action under section 1125(a) or (d) of this title shall be limited as follows:

(A) Where an infringer or violator is engaged solely in the business of printing the mark or violating matter for others and establishes that he or she was an innocent infringer or innocent violator, the owner of the right infringed or person bringing the action under section 1125(a) of this title shall be entitled as against such infringer or violator only to an injunction against future printing.

(B) Where the infringement or violation complained of is contained in or is part of paid advertising matter in a newspaper, magazine, or other similar periodical or in an electronic communication as defined in section 2510(12) of title 18, the remedies of the owner of the right infringed or person bringing the action under section 1125(a) of this title as against the publisher or distributor of such newspaper, magazine, or other similar periodical or electronic communication shall be limited to an injunction against the presentation of such advertising matter in future issues of such newspapers, magazines, or other similar periodicals or in future transmissions of such electronic communications. The limitations of this subparagraph shall apply only to innocent infringers and innocent violators.

    (C) Injunctive relief shall not be available to the owner of the right infringed or person bringing the action under section 1125(a) of this title with respect to an issue of a newspaper, magazine, or other similar periodical or an electronic communication containing infringing matter or violating matter where restraining the dissemination of such infringing matter or violating matter in any particular issue of such periodical or in an electronic communication would delay the delivery of such issue or transmission of such electronic communication after the regular time for such delivery or transmission, and such delay would be due to the method by which publication and distribution of such periodical or transmission of such electronic communication is customarily conducted in accordance with sound business practice, and not due to any method or device adopted to evade this section or to prevent or delay the issuance of an injunction or restraining order with respect to such infringing matter or violating matter.

    (D)(i)(I) A domain name registrar, a domain name registry, or other domain name registration authority that takes any action described under clause (ii) affecting a domain name shall not be liable for monetary relief or, except as provided in subclause (II), for injunctive relief, to any person for such action, regardless of whether the domain name is finally determined to infringe or dilute the mark.

    (II) A domain name registrar, domain name registry, or other domain name registration authority described in subclause (I) may be subject to injunctive relief only if such registrar, registry, or other registration authority has—

      (aa) not expeditiously deposited with a court, in which an action has been filed regarding the disposition of the domain name, documents sufficient for the court to establish the court's control and authority regarding the disposition of the registration and use of the domain name;

      (bb) transferred, suspended, or otherwise modified the domain name during the pendency of the action, except upon order of the court; or

      (cc) willfully failed to comply with any such court order.

    (ii) An action referred to under clause (i)(I) is any action of refusing to register, removing from registration, transferring, temporarily disabling, or permanently canceling a domain name—

      (I) in compliance with a court order under section 1125(d) of this title; or

      (II) in the implementation of a reasonable policy by such registrar, registry, or authority prohibiting the registration of a domain name that is identical to, confusingly similar to, or dilutive of another's mark.

    (iii) A domain name registrar, a domain name registry, or other domain name registration authority shall not be liable for damages under this section for the registration or maintenance of a domain name for another absent a showing of bad faith intent to profit from such registration or maintenance of the domain name.

    (iv) If a registrar, registry, or other registration authority takes an action described under clause (ii) based on a knowing and material misrepresentation by any other person that a domain name is identical to, confusingly similar to, or dilutive of a mark, the person making the knowing and material misrepresentation shall be liable for any damages, including costs and attorney's fees, incurred by the domain name registrant as a result of such action. The court may also grant injunctive relief to the domain name registrant, including the reactivation of the domain name or the transfer of the domain name to the domain name registrant.

    (v) A domain name registrant whose domain name has been suspended, disabled, or transferred under a policy described under clause (ii)(II) may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter. The court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant.

    (E) As used in this paragraph—

      (i) the term "violator" means a person who violates section 1125(a) of this title; and

      (ii) the term "violating matter" means matter that is the subject of a violation under section 1125(a) of this title.

**Addendum-004**

    (3)(A) Any person who engages in the conduct described in paragraph (11) of section 110 of title 17 and who complies with the requirements set forth in that paragraph is not liable on account of such conduct for a violation of any right under this chapter. This subparagraph does not preclude liability, nor shall it be construed to restrict the defenses or limitations on rights granted under this chapter, of a person for conduct not described in paragraph (11) of section 110 of title 17, even if that person also engages in conduct described in paragraph (11) of section 110 of such title.

    (B) A manufacturer, licensee, or licensor of technology that enables the making of limited portions of audio or video content of a motion picture imperceptible as described in subparagraph (A) is not liable on account of such manufacture or license for a violation of any right under this chapter, if such manufacturer, licensee, or licensor ensures that the technology provides a clear and conspicuous notice at the beginning of each performance that the performance of the motion picture is altered from the performance intended by the director or copyright holder of the motion picture. The limitations on liability in subparagraph (A) and this subparagraph shall not apply to a manufacturer, licensee, or licensor of technology that fails to comply with this paragraph.

    (C) The requirement under subparagraph (B) to provide notice shall apply only with respect to technology manufactured after the end of the 180-day period beginning on April 27, 2005.

    (D) Any failure by a manufacturer, licensee, or licensor of technology to qualify for the exemption under subparagraphs (A) and (B) shall not be construed to create an inference that any such party that engages in conduct described in paragraph (11) of section 110 of title 17 is liable for trademark infringement by reason of such conduct.

(July 5, 1946, ch. 540, title VI, §32, 60 Stat. 437; Pub. L. 87–772, §17, Oct. 9, 1962, 76 Stat. 773; Pub. L. 100–667, title I, §127, Nov. 16, 1988, 102 Stat. 3943; Pub. L. 102–542, §3(a), Oct. 27, 1992, 106 Stat. 3567; Pub. L. 105–330, title II, §201(a)(8), Oct. 30, 1998, 112 Stat. 3070; Pub. L. 106–43, §4(a), Aug. 5, 1999, 113 Stat. 219; Pub. L. 106–113, div. B, §1000(a)(9) [title III, §3004], Nov. 29, 1999, 113 Stat. 1536, 1501A–549; Pub. L. 109–9, title II, §202(b), Apr. 27, 2005, 119 Stat. 223.)

Editorial Notes

Prior Provisions

Acts Feb. 20, 1905, ch. 592, §16, 33 Stat. 728; Mar. 19, 1920, ch. 104, §4, 41 Stat. 534.

Amendments

    **2005**—Par. (3). Pub. L. 109–9 added par. (3).

    **1999**—Par. (1). Pub. L. 106–43, in undesignated par., inserted after "includes" in first sentence "the United States, all agencies and instrumentalities thereof, and all individuals, firms, corporations, or other persons acting for the United States and with the authorization and consent of the United States, and" and, in second sentence, substituted "The United States, all agencies and instrumentalities thereof, and all individuals, firms, corporations, other persons acting for the United States and with the authorization and consent of the United States, and any" for "Any".

    Par. (2). Pub. L. 106–113, §1000(a)(9) [title III, §3004(1)], in introductory provisions, substituted "under section 1125(a) or (d) of this title" for "under section 1125(a) of this title".

    Par. (2)(D), (E). Pub. L. 106–113, §1000(a)(9) [title III, §3004(2)], added subpar. (D) and redesignated former subpar. (D) as (E).

    **1998**—Par. (1). Pub. L. 105–330 substituted "As used in this paragraph" for "As used in this subsection" in last paragraph.

    **1992**—Par. (1). Pub. L. 102–542 inserted at end "As used in this subsection, the term 'any person' includes any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity."

    **1988**—Par. (2). Pub. L. 100–667 amended par. (2) generally. Prior to amendment, par. (2) read as follows: "Notwithstanding any other provision of this chapter, the remedies given to the owner of the right infringed shall be limited as follows: (a) Where an infringer in engaged solely in the business of printing the mark for others and establishes that he was an innocent infringer the owner of the right infringed shall be entitled as

**Addendum-005**

against such infringer only to an injunction against future printing; (b) where the infringement complained of is contained in or is part of paid advertising matter in a newspaper, magazine, or other similar periodical the remedies of the owner of the right infringed as against the publisher or distributor of such newspaper, magazine, or other similar periodical shall be confined to an injunction against the presentation of such advertising matter in future issues of such newspapers, magazines, or other similar periodical: *Provided*, That these limitations shall apply only to innocent infringers; (c) injunction relief shall not be available to the owner of the right infringed in respect of an issue of a newspaper, magazine, or other similar periodical containing infringing matter when restraining the dissemination of such infringing matter in any particular issue of such periodical would delay the delivery of such issue after the regular time therefor, and such delay would be due to the method by which publication and distribution of such periodical is customarily conducted in accordance with sound business practice, and not to any method or device adopted for the evasion of this section or to prevent or delay the issuance of an injunction or restraining order with respect to such infringing matter."

**1962**—Par. (1). Pub. L. 87–772 amended provisions generally, and among other changes, inserted "distribution", and struck out "purchasers as to the source of origin of such goods or services" after "or to deceive" in subsec. (a), inserted provisions regarding the likelihood of such use causing confusion, mistake, or deception, in subsec. (b), and struck out the limitation on recovery under subsec. (b) to acts committed with knowledge that such acts would deceive purchasers.

Par. (2)(b). Pub. L. 87–772 substituted "publisher" for "published".

### STATUTORY NOTES AND RELATED SUBSIDIARIES

#### EFFECTIVE DATE OF 1999 AMENDMENT

Amendment by Pub. L. 106–113 applicable to all domain names registered before, on, or after Nov. 29, 1999, see section 1000(a)(9) [title III, §3010] of Pub. L. 106–113, set out as a note under section 1117 of this title.

#### EFFECTIVE DATE OF 1998 AMENDMENT

Amendment by Pub. L. 105–330 effective Oct. 30, 1998, and applicable only to any civil action filed or proceeding before the United States Patent and Trademark Office commenced on or after such date relating to the registration of a mark, see section 201(b) of Pub. L. 105–330, set out as a note under section 1051 of this title.

#### EFFECTIVE DATE OF 1992 AMENDMENT

Pub. L. 102–542, §4, Oct. 27, 1992, 106 Stat. 3568, provided that: "The amendments made by this Act [enacting section 1122 of this title and amending this section and sections 1125 and 1127 of this title] shall take effect with respect to violations that occur on or after the date of the enactment of this Act [Oct. 27, 1992]."

#### EFFECTIVE DATE OF 1988 AMENDMENT

Amendment by Pub. L. 100–667 effective one year after Nov. 16, 1988, see section 136 of Pub. L. 100–667, set out as a note under section 1051 of this title.

#### REPEAL AND EFFECT ON EXISTING RIGHTS

Repeal of inconsistent provisions, effect of this chapter on pending proceedings and existing registrations and rights under prior acts, see notes set out under section 1051 of this title.

15 U.S.C.
United States Code, 2023 Edition
Title 15 - COMMERCE AND TRADE
CHAPTER 22 - TRADEMARKS
SUBCHAPTER III - GENERAL PROVISIONS
Sec. 1125 - False designations of origin, false descriptions, and dilution forbidden
From the U.S. Government Publishing Office, www.gpo.gov

## §1125. False designations of origin, false descriptions, and dilution forbidden

**(a) Civil action**

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

(2) As used in this subsection, the term "any person" includes any State, instrumentality of a State or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.

(3) In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional.

**(b) Importation**

Any goods marked or labeled in contravention of the provisions of this section shall not be imported into the United States or admitted to entry at any customhouse of the United States. The owner, importer, or consignee of goods refused entry at any customhouse under this section may have any recourse by protest or appeal that is given under the customs revenue laws or may have the remedy given by this chapter in cases involving goods refused entry or seized.

**(c) Dilution by blurring; dilution by tarnishment**

**(1) Injunctive relief**

Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

**(2) Definitions**

(A) For purposes of paragraph (1), a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:

(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

**Addendum-007**

    (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
    (iii) The extent of actual recognition of the mark.
    (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

(B) For purposes of paragraph (1), "dilution by blurring" is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark. In determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including the following:
    (i) The degree of similarity between the mark or trade name and the famous mark.
    (ii) The degree of inherent or acquired distinctiveness of the famous mark.
    (iii) The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.
    (iv) The degree of recognition of the famous mark.
    (v) Whether the user of the mark or trade name intended to create an association with the famous mark.
    (vi) Any actual association between the mark or trade name and the famous mark.

(C) For purposes of paragraph (1), "dilution by tarnishment" is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.

**(3) Exclusions**

The following shall not be actionable as dilution by blurring or dilution by tarnishment under this subsection:
    (A) Any fair use, including a nominative or descriptive fair use, or facilitation of such fair use, of a famous mark by another person other than as a designation of source for the person's own goods or services, including use in connection with—
      (i) advertising or promotion that permits consumers to compare goods or services; or
      (ii) identifying and parodying, criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner.

    (B) All forms of news reporting and news commentary.
    (C) Any noncommercial use of a mark.

**(4) Burden of proof**

In a civil action for trade dress dilution under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that—
    (A) the claimed trade dress, taken as a whole, is not functional and is famous; and
    (B) if the claimed trade dress includes any mark or marks registered on the principal register, the unregistered matter, taken as a whole, is famous separate and apart from any fame of such registered marks.

**(5) Additional remedies**

In an action brought under this subsection, the owner of the famous mark shall be entitled to injunctive relief as set forth in section 1116 of this title. The owner of the famous mark shall also be entitled to the remedies set forth in sections 1117(a) and 1118 of this title, subject to the discretion of the court and the principles of equity if—
    (A) the mark or trade name that is likely to cause dilution by blurring or dilution by tarnishment was first used in commerce by the person against whom the injunction is sought after October 6, 2006; and
    (B) in a claim arising under this subsection—
      (i) by reason of dilution by blurring, the person against whom the injunction is sought willfully intended to trade on the recognition of the famous mark; or

  (ii) by reason of dilution by tarnishment, the person against whom the injunction is sought willfully intended to harm the reputation of the famous mark.

**(6) Ownership of valid registration a complete bar to action**

 The ownership by a person of a valid registration under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register under this chapter shall be a complete bar to an action against that person, with respect to that mark, that—

  (A) is brought by another person under the common law or a statute of a State; and

  (B)(i) seeks to prevent dilution by blurring or dilution by tarnishment; or

  (ii) asserts any claim of actual or likely damage or harm to the distinctiveness or reputation of a mark, label, or form of advertisement.

**(7) Savings clause**

 Nothing in this subsection shall be construed to impair, modify, or supersede the applicability of the patent laws of the United States.

**(d) Cyberpiracy prevention**

 (1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—

  (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

  (ii) registers, traffics in, or uses a domain name that—

   (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

   (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or

   (III) is a trademark, word, or name protected by reason of section 706 of title 18 or section 220506 of title 36.

 (B)(i) In determining whether a person has a bad faith intent described under subparagraph (A), a court may consider factors such as, but not limited to—

  (I) the trademark or other intellectual property rights of the person, if any, in the domain name;

  (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

  (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

  (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

  (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

  (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

  (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

  (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

    (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

  (ii) Bad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful.

  (C) In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark.

  (D) A person shall be liable for using a domain name under subparagraph (A) only if that person is the domain name registrant or that registrant's authorized licensee.

  (E) As used in this paragraph, the term "traffics in" refers to transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration.

  (2)(A) The owner of a mark may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located if—

    (i) the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c); and

    (ii) the court finds that the owner—

      (I) is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1); or

      (II) through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) by—

        (aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and

        (bb) publishing notice of the action as the court may direct promptly after filing the action.

  (B) The actions under subparagraph (A)(ii) shall constitute service of process.

  (C) In an in rem action under this paragraph, a domain name shall be deemed to have its situs in the judicial district in which—

    (i) the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located; or

    (ii) documents sufficient to establish control and authority regarding the disposition of the registration and use of the domain name are deposited with the court.

  (D)(i) The remedies in an in rem action under this paragraph shall be limited to a court order for the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark. Upon receipt of written notification of a filed, stamped copy of a complaint filed by the owner of a mark in a United States district court under this paragraph, the domain name registrar, domain name registry, or other domain name authority shall—

    (I) expeditiously deposit with the court documents sufficient to establish the court's control and authority regarding the disposition of the registration and use of the domain name to the court; and

    (II) not transfer, suspend, or otherwise modify the domain name during the pendency of the action, except upon order of the court.

  (ii) The domain name registrar or registry or other domain name authority shall not be liable for injunctive or monetary relief under this paragraph except in the case of bad faith or reckless disregard, which includes a willful failure to comply with any such court order.

  (3) The civil action established under paragraph (1) and the in rem action established under paragraph (2), and any remedy available under either such action, shall be in addition to any other civil action or remedy otherwise applicable.

**Addendum-010**

(4) The in rem jurisdiction established under paragraph (2) shall be in addition to any other jurisdiction that otherwise exists, whether in rem or in personam.

(July 5, 1946, ch. 540, title VIII, §43, 60 Stat. 441; Pub. L. 100–667, title I, §132, Nov. 16, 1988, 102 Stat. 3946; Pub. L. 102–542, §3(c), Oct. 27, 1992, 106 Stat. 3568; Pub. L. 104–98, §3(a), Jan. 16, 1996, 109 Stat. 985; Pub. L. 106–43, §§3(a)(2), 5, Aug. 5, 1999, 113 Stat. 219, 220; Pub. L. 106–113, div. B, §1000(a)(9) [title III, §3002(a)], Nov. 29, 1999, 113 Stat. 1536, 1501A–545; Pub. L. 109–312, §2, Oct. 6, 2006, 120 Stat. 1730; Pub. L. 112–190, §1(a), Oct. 5, 2012, 126 Stat. 1436.)

### Editorial Notes

#### References in Text

Acts March 3, 1881, and February 20, 1905, referred to in subsec. (c)(2)(A)(iv), (6), are acts Mar. 3, 1881, ch. 138, 21 Stat. 502, and Feb. 20, 1905, ch. 592, 33 Stat. 724, which were repealed insofar as inconsistent with this chapter by act July 5, 1946, ch. 540, §46(a), 60 Stat. 444. Act Feb. 20, 1905, was classified to sections 81 to 109 of this title.

#### Constitutionality

For information regarding the constitutionality of this section, see the Table of Laws Held Unconstitutional in Whole or in Part by the Supreme Court on the Constitution Annotated website, constitution.congress.gov.

#### Prior Provisions

Act Mar. 19, 1920, ch. 104, §3, 41 Stat. 534.

#### Amendments

**2012**—Subsec. (c)(6). Pub. L. 112–190 added subpars. (A) and (B) and struck out former subpars. (A) and (B) which read as follows:

"(A)(i) is brought by another person under the common law or a statute of a State; and

"(ii) seeks to prevent dilution by blurring or dilution by tarnishment; or

"(B) asserts any claim of actual or likely damage or harm to the distinctiveness or reputation of a mark, label, or form of advertisement."

**2006**—Subsec. (c). Pub. L. 109–312, §2(1), added subsec. (c) and struck out former subsec. (c) which related to remedies for dilution of famous marks.

Subsec. (d)(1)(B)(i)(IX). Pub. L. 109–312, §2(2), substituted "subsection (c)" for "subsection (c)(1)".

**1999**—Subsec. (a)(3). Pub. L. 106–43, §5, added par. (3).

Subsec. (c)(2). Pub. L. 106–43, §3(a)(2), inserted "as set forth in section 1116 of this title" after "relief" in first sentence.

Subsec. (d). Pub. L. 106–113 added subsec. (d).

**1996**—Subsec. (c). Pub. L. 104–98 added subsec. (c).

**1992**—Subsec. (a). Pub. L. 102–542 designated existing provisions as par. (1), redesignated former pars. (1) and (2) as subpars. (A) and (B), respectively, and added par. (2).

**1988**—Subsec. (a). Pub. L. 100–667 amended subsec. (a) generally. Prior to amendment, subsec. (a) read as follows: "Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

### Statutory Notes and Related Subsidiaries

#### Effective Date of 2012 Amendment

Pub. L. 112–190, §1(b), Oct. 5, 2012, 126 Stat. 1436, provided that: "The amendment made by subsection (a) [amending this section] shall apply to any action commenced on or after the date of the enactment of this

Addendum-011

Act [Oct. 5, 2012]."

### Effective Date of 1999 Amendment

Amendment by Pub. L. 106–113 applicable to all domain names registered before, on, or after Nov. 29, 1999, see section 1000(a)(9) [title III, §3010] of Pub. L. 106–113, set out as a note under section 1117 of this title.

### Effective Date of 1996 Amendment

Pub. L. 104–98, §5, Jan. 16, 1996, 109 Stat. 987, provided that: "This Act [amending this section and section 1127 of this title and enacting provisions set out as a note under section 1051 of this title] and the amendments made by this Act shall take effect on the date of the enactment of this Act [Jan. 16, 1996]."

### Effective Date of 1992 Amendment

Amendment by Pub. L. 102–542 effective with respect to violations that occur on or after Oct. 27, 1992, see section 4 of Pub. L. 102–542, set out as a note under section 1114 of this title.

### Effective Date of 1988 Amendment

Amendment by Pub. L. 100–667 effective one year after Nov. 16, 1988, see section 136 of Pub. L. 100–667, set out as a note under section 1051 of this title.

### Repeal and Effect on Existing Rights

Repeal of inconsistent provisions, effect of this chapter on pending proceedings and existing registrations and rights under prior acts, see notes set out under section 1051 of this title.

### Study on Abusive Domain Name Registrations Involving Personal Names

Pub. L. 106–113, div. B, §1000(a)(9) [title III, §3006], Nov. 29, 1999, 113 Stat. 1536, 1501A–550, provided that:

"(a) In General.—Not later than 180 days after the date of the enactment of this Act [Nov. 29, 1999], the Secretary of Commerce, in consultation with the Patent and Trademark Office and the Federal Election Commission, shall conduct a study and report to Congress with recommendations on guidelines and procedures for resolving disputes involving the registration or use by a person of a domain name that includes the personal name of another person, in whole or in part, or a name confusingly similar thereto, including consideration of and recommendations for—

"(1) protecting personal names from registration by another person as a second level domain name for purposes of selling or otherwise transferring such domain name to such other person or any third party for financial gain;

"(2) protecting individuals from bad faith uses of their personal names as second level domain names by others with malicious intent to harm the reputation of the individual or the goodwill associated with that individual's name;

"(3) protecting consumers from the registration and use of domain names that include personal names in the second level domain in manners which are intended or are likely to confuse or deceive the public as to the affiliation, connection, or association of the domain name registrant, or a site accessible under the domain name, with such other person, or as to the origin, sponsorship, or approval of the goods, services, or commercial activities of the domain name registrant;

"(4) protecting the public from registration of domain names that include the personal names of government officials, official candidates, and potential official candidates for Federal, State, or local political office in the United States, and the use of such domain names in a manner that disrupts the electoral process or the public's ability to access accurate and reliable information regarding such individuals;

"(5) existing remedies, whether under State law or otherwise, and the extent to which such remedies are sufficient to address the considerations described in paragraphs (1) through (4); and

"(6) the guidelines, procedures, and policies of the Internet Corporation for Assigned Names and Numbers and the extent to which they address the considerations described in paragraphs (1) through (4).

"(b) Guidelines and Procedures.—The Secretary of Commerce shall, under its Memorandum of Understanding with the Internet Corporation for Assigned Names and Numbers, collaborate to develop guidelines and procedures for resolving disputes involving the registration or use by a person of a domain name that includes the personal name of another person, in whole or in part, or a name confusingly similar thereto."