Case No. 24-6839

# United States Court of Appeals
# for the Ninth Circuit

RICHARD BLAIR,

*Plaintiff-Appellant,*

*v.*

AUTOMOBILI LAMBORGHINI SPA,

*Defendant-Appellee.*

On Appeal from
The United States District Court
for the District of Arizona
Case No. 2:22-cv-01439-ROS
The Honorable Judge Roslyn O. Silver

## Defendant-Appellee's Response Brief

Lauren Watt
Nicholas Nowak
STERNE KESSLER GOLDSTEIN & FOX PLLC
1101 K Street, NW
Floor 10
Washington, DC 20005
(202) 371-2600

*Counsel for Defendant-Appellee*
*Automobili Lamborghini SpA.*

May 2, 2025

i

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................1

ISSUES PRESENTED...................................................................................2

STATEMENT OF THE CASE .....................................................................3

I.    LAMBORGHINI'S WELL-KNOW, WORLD-FAMOUS, AND DISTINCT MARK.............3

II.   THE <LAMBO.COM> DOMAIN NAME..................................................4

III.  THE WIPO PROCEEDING .................................................................5

IV.   THE DISTRICT COURT PROCEEDING .................................................6

SUMMARY OF THE ARGUMENT ............................................................7

I.    STANDARD OF REVIEW ....................................................................8

II.   CYBERSQUATTING VIOLATIONS UNDER THE ACPA. ...........................10

ARGUMENT ..............................................................................................13

I.    THE SOLE REASONABLE INFERENCE FROM THE UNDISPUTED
      FACTS AND CIRCUMSTANCES OF THIS CASE IS THAT MR. BLAIR
      ACTED WITH A BAD FAITH INTENT TO PROFIT FROM THE
      LAMBORGHINI MARK ......................................................................13

      A.    The non-exhaustive nine factors demonstrate that Mr. Blair acted with
            a bad faith intent to profit. ..................................................13

            1.    Mr. Blair does not have any intellectual property rights in the
                  <lambo.com> domain name (Factor I). ...................................13

            2.    It is undisputed that "Lambo" is not Mr. Blair's legal name and
                  that Mr. Blair did not begin using the nickname Lambo until
                  *after* he acquired the <lambo.com> domain (Factor II). ..........14

            3.    Mr. Blair has not made a bona fide use of the domain (Factors
                  III and IV). ..........................................................20

            4.    Mr. Blair had an intent to divert and disparage Lamborghini
                  through its use of <lambo.com> (Factor V). ...........................20

            5.    Mr. Blair has offered to sell the <lambo.com> domain for
                  exorbitant amounts of money (Factor VI). ..............................22

            6.    Mr. Blair's other domain names may also show signs of
                  cybersquatting (Factor VIII). ..........................................26

7.   Lamborghini's mark is distinctive and famous (Factor IX). ....27

8.   Taken together, the facts of this case lead to the only conclusion that Mr. Blair acted in bad faith through his ownership and offer for sale of <lambo.com>. .................................................30

B.   The District Court's analysis and judgment was proper. ....................31

CONCLUSION .......................................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*2-Bar Ranch Limited Partnership v. U.S. Forest Serv.*,
 996 F.3d 984 (9th Cir. 2021) .................................................................8

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)...............................*passim*

*Anlin Indus., Inc. v. Burgess*,
 301 F. App'x 745 (9th Cir. 2008) .......................................................12

*Audi AG v. Posh Clothing*,
 LLC, No. 18-14254, 2019 WL 1951166 (D.N.J. May 2, 2019),
 report and recommendation adopted, No. 1:20-cv-1437, 2021 WL
 8445261 (E.D. Va. Aug. 23, 2021)............................................3, 28

*Automobili Lamborghini S.p.A v. Garcia*,
 No. 1:18-cv-62, 2020 WL 2048165 (E.D. Va. Apr. 20, 2020)......................3, 27

*Automobili Lamborghini SpA v. Lamboshop, Inc.*,
 No. 2:07-cv-00266-JES-SPC, 2008 WL 2743647 (M.D. Fla. June
 5, 2008) ....................................................................................3

*Aviva USA Corp. v. Vazirani*,
 632 Fed. Appx. 885 (9th Cir. 2015)....................................................31

*Balint v. Carson City*,
 180 F.3d 1047 (9th Cir. 1999) .............................................................9

*Black v. Irving Materials, Inc.*,
 No. 17-cv-06734-LHK, 2019 WL 1995342 (N.D. Cal. May 6,
 2019) ......................................................................................26

*Branch Banking & Trust Co. v. D.M.S.I., LLC*,
 871 F.3d 751 (9th Cir. 2017) ...............................................................8

*Calista Enterprises Ltd. v. Tenza Trading Ltd*,
 43 F. Supp. 3d 1099 (D. Ore. 2014) ...................................................29

iv

*Carey v. Nevada Gaming Control Board*,
   279 F.3d 873 (9th Cir. 2002) ...................................................................8

*Cello Holdings, L.L.C. v. Lawrence-Dahl Cos.*,
   89 F. Supp. 2d 464 (S.D.N.Y. 2000) ..............................................29, 30

*Coca–Cola Co. v. Purdy*,
   382 F.3d 774 (8th Cir. 2004) ...............................................................12

*Desire, LLC v. Manna Textiles, Inc.*,
   986 F.3d 1253 (9th Cir. 2021) (grant), *cert. denied*, 142 S. Ct. 343
   (2021) .....................................................................................................8

*Digby Adler Group LLC v. Image Rent a Car, Inc.*,
   79 F. Supp. 3d 1095 (N.D. Cal. 2015)..................................................30

*DSPT International, Inc. v. Nahum*,
   624 F.3d 1213 (9th Cir. 2010) ......................................................*passim*

*E. & J. Gallo Winery v. Spider Webs Ltd.*,
   129 F. Supp. 2d 1033 (S.D. Tex. 2001)................................................21

*Frudden v. Pilling*,
   877 F.3d 821 (9th Cir. 2017) .................................................................9

*Horton by Horton v. City of Santa Maria*,
   915 F.3d 592 (9th Cir. 2019) .................................................................8

*International Bancorp, LLC v. Societe Des Baines De Mer Et Du
   Cercle Des Estrangers A Monaco*,
   192 F.Supp.2d 467 (E.D. Va. 2002) ....................................................12

*Interstellar Starship Services, Ltd. v. Epix, Inc.*,
   304 F.3d 936 (9th Cir. 2002) ...............................................................11

*Lahoti v. VeriCheck, Inc.*,
   586 F.3d 1190 (9th Cir. 2009) ......................................................20, 30

*Lucas Nursery & Landscaping, Inc. v. Grosse*,
   359 F.3d 806 (6th Cir. 2004) ...............................................................12

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986).................................................................................9

*Mull for Mull v. Motion Picture Industry Health Plan*,
　865 F.3d 1207 (9th Cir. 2017) ................................................................8

*Nu Pagamentos S.A.–Instituição de Pagamento v. Hudson*,
　No. 2:21-cv-69-RWS, 2023 WL 2377641 (N.D. Ga. Feb. 22, 2023) ...............26

*Nunez v. Superior Oil Co.*,
　572 F.2d 1119 (5th Cir. 1978) ..............................................................33

*Olsen v. Idaho State Board of Medicine*,
　363 F.3d 916 (9th Cir. 2004) ................................................................9

*Oram v. Linderman*,
　No. CV-12-02450-PHX-FJM (BSB), 2014 WL 2569123 (D. Ariz.
　June 9, 2014)...................................................................................14

*Orr v. Bank of America, NT & SA*,
　285 F.3d 764 (9th Cir. 2002) ................................................................14

*Pleasant v. Miranda*,
　No. 21-55784, 2022 WL 2304221 (9th Cir. Jun. 27, 2022) ............................32

*Prudential Insurance Co. of America v. Shenzhen Stone Network
　Information Ltd.*,
　58 F.4th 785 (4th Cir. 2023) ................................................................11

*Scott v. Harris*,
　550 U.S. 372 (2007)....................................................................1, 7, 9

*Sicor Ltd. v. Cetus Corp.*,
　51 F.3d 848 (9th Cir. 1995) ................................................................26

*Social Technologies LLC v. Apple Inc.*,
　4 F.4th 811 (9th Cir. 2021) ................................................................9

*Southern Grouts & Mortars, Inc. v. 3M Co.*,
　575 F.3d 1235 (11th Cir. 2009) .......................................................11, 12

*Sporty's Farm LLC. v. Sportman's Market, Inc.*,
　202 F.3d 489 (2d Cir. 2000) .......................................................12, 13, 19

*Super-Krete International, Inc. v. Sadleir*,
　712 F. Supp. 2d 1023 (C.D. Cal. 2010)......................................................28

*Suzuki Motor Corp. v. Consumers Union, Inc.*,
  330 F.3d 1110 (9th Cir. 2003) ............................................................... 8

*U.S. Fedelity & Guaranty Co. v. Planters Bank & Trust Co.*,
  77 F.3d 863 (5th Cir. 1996) ................................................................. 33

*Useden v. Acker*,
  947 F.2d 1563 (11th Cir. 1991) ........................................................... 33

*Volkswagen Group of America, Inc. v. Unincorporated Associations
  Identified in Schedule A*,
  No. 1:20-cv-01437-LO-MSN, 2021 WL 8444641 (E.D. Va. July
  21, 2021) ........................................................................................... 3, 28

**Statutes**

15 U.S.C. § 1125(d)(1)(B)(i) ................................................................... 11

Anticybersquatting Protection Act, 15 U.S.C. § 1125(d) ......................... 12

**Other Authorities**

4 McCarthy on Trademarks and Unfair Competition § 25A:53 ................. 11

4 McCarthy on Trademarks and Unfair Competition § 25A:55 ................. 18

4 McCarthy on Trademarks and Unfair Competition § 25A:62 ................. 28

Federal Rule of Civil Procedure 26(a) .................................................... 29

Federal Rule of Civil Procedure 37(c) .................................................... 29

Federal Rule of Civil Procedure 56(c) .................................................. 8, 9

Federal Rule of Evidence 802 ................................................................. 15

H.R.Rep. No. 106–412, 10 ..................................................................... 18

S.Rep. No. 106–140 ............................................................................... 12

## INTRODUCTION

The District Court properly granted summary judgment for Automobili Lamborghini S.p.A. ("Lamborghini") concluding that Mr. Blair registered <lambo.com> with a bad faith intent to profit from the LAMBORGHINI trademark. Mr. Blair now appeals the District Court's conclusion, arguing that the District Court erred (1) by disregarding evidence and (2) by making improper credibility determinations.

The crux of Mr. Blair's argument on both points appears to rely on his implicit assertion that the mere existence of some alleged factual dispute between the parties must defeat an otherwise properly supported motion for summary judgment. But Mr. Blair needs to do more than raise a metaphysical doubt as to the material facts, as he attempts to do, for example, by claiming he never *actually* intended to sell the domain despite the great weight of the documentary evidence to the contrary. To defeat Lamborghini's summary judgment motion, he must create a "genuine issue of material fact" for trial—something that the District Court properly concluded he failed to do. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248 (1986); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) (concluding that "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a

1

court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment").

Despite Mr. Blair's attempt to argue otherwise, summary judgment was proper here as no genuine issue of material fact exists as to Mr. Blair's bad faith attempt to profit off of the LAMBORGHINI mark. Mr. Blair has no trademark or other intellectual property rights in the disputed domain name and is not commonly known by the nickname "Lambo." Mr. Blair redirected visitors to the <lambo.com> domain to a third party webpage tarnishing Lamborghini's reputation and goodwill. Mr. Blair offered the disputed domain for sale for millions of dollars, going so far as to communicate with purchasers regarding the price and including a "buy now" feature that would have allowed anyone to purchase the domain through the click of a button. Finally, Mr. Blair admits that the LAMBORGHINI mark is famous and distinctive and that "Lambo" is confusingly similar to LAMBORGHINI. Given the facts of the case and the great weight of the evidence favoring Lamborghini, Lamborghini respectfully requests that the Court affirm the District Court's grant of summary judgment.

## ISSUES PRESENTED

Whether the District Court correctly determined that the totality of the evidence showed Mr. Blair acted with bad intent to profit off of the LAMBORGHINI trademark by registering the <lambo.com> domain.

2

# STATEMENT OF THE CASE

## I.   LAMBORGHINI'S WELL-KNOW, WORLD-FAMOUS, AND DISTINCT MARK

On January 16, 1990, Lamborghini filed an application, Serial No.
74019105, with the United States Patent and Trademark Office ("USPTO") to
register the LAMBORGHINI mark. SER-016. On November 13, 1990, the USPTO
granted Lamborghini's application and the LAMBORGHINI mark received its
federal registration, U.S. Registration No. 1622382. *Id.* Over the years,
LAMBORGHINI has become a well-known, world-famous mark that has been
used for over fifty years. *See, e.g. Automobili Lamborghini S.p.A v. Garcia*, No.
1:18-cv-62 (TSE/TCB), 2020 WL 2048165, at *5 (E.D. Va. Apr. 20, 2020)
("Lamborghini has used the Marks exclusively and continuously for over fifty
years, has never abandoned them, and has spent millions of dollars in advertising
and promoting the Marks throughout the United States and the world. As a result,
the Marks are world famous and the consuming public exclusively associates the
Marks with Lamborghini." (internal citations omitted)); *Audi AG v. Posh Clothing*,
LLC, No. 18-14254, 2019 WL 1951166, at *4 (D.N.J. May 2, 2019); *Volkswagen
Grp. of Am., Inc. v. Unincorporated Ass'n Identified in Schedule A*, No. 1:20-cv-
01437-LO-MSN, 2021 WL 8444641, at *2 (E.D. Va. July 21, 2021), report and
recommendation adopted, No. 1:20-cv-1437, 2021 WL 8445261 (E.D. Va. Aug.
23, 2021). "Lambo" is a well-known shorthand for Lamborghini. *See Automobili*

*Lamborghini SpA v. Lamboshop, Inc.*, No. 2:07-cv-00266-JES-SPC, 2008 WL 2743647, at *4 (M.D. Fla. June 5, 2008) (finding "Lambo" was a "well-known shorthand for Lamborghini").

## II.   THE <LAMBO.COM> DOMAIN NAME

The domain <lambo.com> was originally registered on March 5, 2000. SER-146. Mr. Blair purchased the domain on February 16, 2018, for $10,000. *See* SER-021. It was not until three years after purchasing the domain that Mr. Blair alleges he began to use the moniker "Lambo" online. *See* SER-021. Since purchasing the <lambo.com> domain, Mr. Blair has listed the domain for sale at increasing values. At least as early as August 6, 2020, Mr. Blair listed the disputed domain for sale for a price of $1,129,298.00. SER-075. By December 23, 2020, the domain was listed for $1.5 million. SER077-079. By January 27, 2021, the domain was listed for $3.3 million. SER081-083. By September 23, 2021, the domain was listed for $12 million. SER-085. By August 11, 2022, Mr. Blair listed the domain for €50 million. SER087-088. By September 7, 2023, Mr. Blair listed the domain for $75 million. SER-090. Prior to the District Court's summary judgment, the domain was still listed for $75 million. SER-092. Notably, the most recent version of the website had a "Buy Now" feature that would allow a purchaser to purchase the domain immediately at the requested price. *See id.*

4

Mr. Blair has responded to and entertained potential purchasers of the

<lambo.com> domain. *See* SER-094-096; SER098-100. In an email dated January

6, 2021, in response to an opening offer of $100,000, Mr. Blair confirmed that the

"reserve" price for <lambo.com> was $888,888. SER-102-105. In another email

correspondence from September 20, 2021, Mr. Blair told a prospective buyer that

the "asking price for Lambo.com was USD $12m." SER-040-041. On April 17,

2023, in responding to an offer to buy the domain for $50,000,000, Mr. Blair told

the prospective buyer that he "would be agreeable to a near all cash offer if ready

to close." SER-072. Also on April 17, 2023, Mr. Blair informed a potential

purchaser that "if you are interested, you can use the buy now button and checkout

via escrow.com." SER-037-38.

Mr. Blair has never used the <lambo.com> domain name. Mr. Blair has

admitted that he "initially planned on developing a website at [<lambo.com>]" but

"[t]hose plans were subsequently delayed and abandoned." 3-ER-370.

## III. THE WIPO PROCEEDING

On April 29, 2022, Lamborghini filed a Complaint with the WIPO

Arbitration and Mediation Center (the "Center") seeking a transfer of domain name

<lambo.com> under the Uniform Domain Name Dispute Resolution Policy. *See*

SER-043. On August 3, 2022, the panel determined that the <lambo.com> domain

was confusingly similar to the LAMBORGHINI mark and that Mr. Blair was using

5

the mark in bad faith. The panel ordered Mr. Blair to transfer the domain to Lamborghini. *See* SER-052.

After Lamborghini filed its WIPO complaint, Mr. Blair redirected visitors to the <lambo.com> domain to a third-party website wherein Mr. Blair stated, among other things, that he would "defend, defeat, and humiliate" Lamborghini, accused Lamborghini of "theft," and provided a link to the UDRP proceedings. SER-062 (showing the redirection page); SER-064-068 (showing the page that <lambo.com> redirected to).

## IV. THE DISTRICT COURT PROCEEDING

In order to halt the transfer of the domain pursuant to the WIPO panel's final determination, Mr. Blair filed a declaratory judgment action against Lamborghini seeking declaratory relief that <lambo.com> is not unlawful under the Anti-cybersquatting Consumer Protection Act ("ACPA") on August 24, 2022. 3-ER-383. Lamborghini counterclaimed that Mr. Blair's ownership and use of the domain <lambo.com> violated the Anti-cybersquatting Protection Act, 15 U.S.C. § 1125(d). 3-ER-362-363. During the pending litigation, Mr. Blair conceded that "Lambo" is confusingly similar to LAMBORGHINI. SER-127 at 18:2-7 (attorney for Mr. Blair conceding that "Lambo" "is a term that is commonly associated with the Lamborghini car; and so from the context of an ACPA claim, I tend to agree

with [Lamborghini's attorney] that it is likely that the confusing similarity threshold would be met.").

## SUMMARY OF THE ARGUMENT

Taken together, the facts demonstrate that Mr. Blair's registration of the <lambo.com> domain is unlawful. The only element of the Anti-Cybersquatting Consumer Protection Act that the parties dispute is whether Mr. Blair "acted with bad faith intent to profit from th[e] [LAMBORGHINI] mark." *See DSPT Int'l*, 624 F.3d at 1218–19. The undisputed facts—as presented in detail to the District Court and reviewed again below—show that he did.

Mr. Blair's sole argument on appeal is that summary judgment should be denied, because he has raised some metaphysical doubt as to the material facts. But to defeat Lamborghini's summary judgment motion, Mr. Blair must create a "genuine issue of material fact" for trial—something that the District Court properly concluded he failed to do. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248 (1986); *see also Scott*, 550 U.S. at 380 (concluding that "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Accordingly, the District Court's grant of Lamborghini's Motion for Summary Judgment was proper, and Lamborghini respectfully requests this Court to affirm that judgment on appeal.

## STANDARD OF REVIEW

I. **STANDARD OF REVIEW**

A district court's decision to grant, partially grant, or deny summary judgment or a summary adjudication motion is reviewed *de novo*. *See, e.g.*, *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1259 (9th Cir. 2021) (grant), *cert. denied*, 142 S. Ct. 343 (2021); *2-Bar Ranch Ltd. P'ship v. U.S. Forest Serv.*, 996 F.3d 984, 990 (9th Cir. 2021) (partial summary judgment); *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 606 (9th Cir. 2019) (denial); *Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 759 (9th Cir. 2017); *Mull for Mull v. Motion Picture Indus. Health Plan*, 865 F.3d 1207, 1209 (9th Cir. 2017); *but see Carey v. Nevada Gaming Control Bd.*, 279 F.3d 873, 877 n.1 (9th Cir. 2002) (declining to review denial of summary judgment).

The appellate court's review is governed by the same standard used by the trial court under Fed. R. Civ. P. 56(c). *See Suzuki Motor Corp. v. Consumers Union, Inc.*, 330 F.3d 1110, 1131 (9th Cir. 2003).

On review, the appellate court must determine, when viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine

issues of material fact and whether the district court correctly applied the relevant substantive law. *See Soc. Techs. LLC v. Apple Inc.*, 4 F.4th 811, 816 (9th Cir. 2021); *Frudden v. Pilling*, 877 F.3d 821, 828 (9th Cir. 2017); *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). The court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial. *See Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue" for trial. *Id* at 586. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248 (1986). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

9

## II.  CYBERSQUATTING VIOLATIONS UNDER THE ACPA.

To establish a cybersquatting violation under the ACPA, a mark owner must prove "(1) the [domain name owner] registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the [mark owner]; and (3) the [domain name owner] acted with bad faith intent to profit from that mark." *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218–19 (9th Cir. 2010) (internal quotations omitted). The ACPA lists nine non-exhaustive factors a court may consider in determining bad faith:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
> (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
> (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to

10

marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

15 U.S.C. § 1125(d)(1)(B)(i).

The first four factors are circumstances indicating good faith use, the next four factors are circumstances indicating bad faith use, and the last factor can point in either direction. 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25A:53. "The most important grounds for finding bad faith are 'the unique circumstances of the case, which do not fit neatly into the specific factors" enumerated by Congress.'" *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 946–47 (9th Cir. 2002) (internal citations omitted). Moreover, evidence of bad faith may arise after the registration of the domain name. *DSPT Int'l*, 624 F.3d at 1220. "None of the factors is individually dispositive, and they should not be added up against one another (i.e., a party 'winning' five factors does not win the argument per se)." *Prudential Ins. Co. of Am. v. Shenzhen Stone Network Info. Ltd.*, 58 F.4th 785, 798–99 (4th Cir. 2023).

The plain language of the ACPA requires not just proof of "bad faith" in a generalized sense. Rather, "[a] defendant is liable only where a plaintiff can establish that the defendant had a 'bad faith *intent to profit*.'" *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1246 (11th Cir. 2009) (emphasis in original) (citing

11

15 U.S.C. § 1125(d)). "We cannot read the words 'intent to profit' out of the statute." *Id*.; *see Sporty's Farm LLC. v. Sportman's Mkt, Inc.*, 202 F.3d 489, 499 n. 13 (2nd Cir. 2000) (noting "bad faith intent to profit" is a term of art in the statute and should not necessarily be equated with "bad faith" in other contexts). "Profit includes an attempt to procure an advantageous gain or return." *DSPT Int'l, Inc.*, 624 F.3d at 1221 (*quoting Coca–Cola Co. v. Purdy*, 382 F.3d 774, 786 (8th Cir. 2004)). The crucial elements of bad faith intent to profit, according to the ACPA's Senate Judiciary Committee Report, are distilled to mean an "intent to trade on the goodwill of another's mark." *Lucas Nursery & Landscaping, Inc. v. Grosse*, 359 F.3d 806, 810 (6th Cir. 2004) (quoting S.Rep. No. 106–140, at *9).

"Determining bad faith intent to profit using the nine statutory factors and the 'unique circumstances of the case' is fact dependent." *Anlin Indus., Inc. v. Burgess*, 301 F. App'x 745, 746 (9th Cir. 2008). Because "intent is rarely discernable directly, it must typically be inferred from pertinent facts and circumstances." *Int'l Bancorp, LLC v. Societe Des Baines De Mer Et Du Cercle Des Estrangers A Monaco*, 192 F.Supp.2d 467, 486 (E.D. Va. 2002).

# ARGUMENT

## I. THE SOLE REASONABLE INFERENCE FROM THE UNDISPUTED FACTS AND CIRCUMSTANCES OF THIS CASE IS THAT MR. BLAIR ACTED WITH A BAD FAITH INTENT TO PROFIT FROM THE LAMBORGHINI MARK

### A. The non-exhaustive nine factors demonstrate that Mr. Blair acted with a bad faith intent to profit.

It is undisputed that (1) Mr. Blair owns the domain <lambo.com>, (2) the LAMBORGHINI mark was distinctive prior to his acquisition of <lambo.com>, and (3) <lambo.com> is confusingly similar to the LAMBORGHINI mark. Open. Br. at 1. As a result, the only issue the District Court needed to determine on summary judgment was whether Mr. Blair had a bad faith intent to profit off of the LAMBORGHINI mark. The undisputed facts, when taken together, show that he did.

#### 1. Mr. Blair does not have any intellectual property rights in the <lambo.com> domain name (Factor I).

It is undisputed that Mr. Blair does not have any intellectual property rights in the <lambo.com> domain name. *See* SER-021. Accordingly, the District Court correctly concluded that this factor weighs in favor of Lamborghini. *See Sporty's Farm L.L.C.*, 202 F.3d at 498.

13

    **2.**    **It is undisputed that "Lambo" is not Mr. Blair's legal name and that Mr. Blair did not begin using the nickname Lambo until *after* he acquired the \<lambo.com\> domain (Factor II).**

It is undisputed that "Lambo" is not Mr. Blair's legal name. 3-ER-368 ¶ 2 ("Plaintiff Richard Blair is a citizen of the United Kingdom with a residence at 8 West St., San Rafael, CA 94901."). Mr. Blair contends, however, that his adoption of the nickname "Lambo" *after* his acquisition of the domain is indicative of an absence of bad faith. Open. Br. at 31-34. There are several flaws in Mr. Blair's argument.

As an initial matter, Mr. Blair failed to offer any admissible evidence tending to support the conclusion that he is widely known by others as "Lambo." To the extent Mr. Blair provides any evidence of others referring to him as "Lambo" (*id.* at 23), that evidence is inadmissible hearsay which cannot be relied on in a motion for summary judgment. *See Orr v. Bank of Am.*, *NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."); *Oram v. Linderman*, No. CV-12-02450-PHX-FJM (BSB), 2014 WL 2569123, at * 4 (D. Ariz. June 9, 2014) ("While material produced at the summary judgment stage need not be in the form of admissible evidence, in order to create a genuine dispute of fact, a party must demonstrate at summary judgment that he can present evidence in support of the fact that would be admissible at trial."). For example, Mr. Blair states that his

14

father "frequently" addresses Mr. Blair as "Lambo." Open. Br. at 23. But Mr.

Blair's father has not been identified as a trial witness. *See* SER-147 (listing only

Mr. Blair as a potential witness). Therefore, Mr. Blair's evidence on the issue

constitutes unreliable hearsay under FRE 802, would be inadmissible at trial, and

should not be considered on summary judgment.

Indeed, the only evidence Mr. Blair offers in support of his claimed adoption

of the nickname "Lambo" consists of his own self-serving statements. *See* Open.

Br. at 22-23. But even this is contradicted by contemporaneous evidence showing

that Mr. Blair regularly referred to himself as "Richard," including in email

correspondence to potential domain purchasers. For example, in email

correspondence dated as recently as April 17, 2023, Mr. Blair responded to an

inquiry regarding an offer to buy the disputed domain. In that correspondence, not

only did Mr. Blair identify himself in the "From" line as "Richard Blair" but he

refers to himself as "Richard" in the signature line. An annotated excerpt of the

email is shown below:

From: Richard Blair
Subject: Lambo.com
To: rudy@rudybekker.com
Sent: April 17, 2023 5:05 AM (UTC-04:00)
Attached: publickey - EmailAddress(s=rb@ceec.com) - 0xACE46E04.asc

Hello,
I am responding to your inquiry. Price as shown, if you are interested you can use the buy now button and checkout via escrow.com. If you have any questions let me know.

Regards,
Richard

Sent from Proton Mail mobile

SER-038.

Other email correspondence regarding offers to buy the disputed domain similarly identify Mr. Blair as "Richard." The following annotated excerpt is from an email dated September 30, 2021:



From: r.blair@gax.com
Subject: Re: lambo.com
To: sidzgandhi@gmail.com
Sent: September 30, 2021 12:04 PM (UTC-04:00)
Attached: publickey - EmailAddress(s=r.blair@gax.com) - 0x86811FBC.asc

Hello, asking price for Lambo.com is USD $12m.

Richard

Sent from ProtonMail mobile

-------- Original Message --------
On Sep 30, 2021, 3:09 AM, Siddharth Gandhi < sidzgandhi@gmail.com> wrote:

Hi,

Would you be interested in selling lambo.com domain, if so what would be the price?

Regards,
Siddharth

16

SER-041. And yet another example from January 5, 2021:



| From: | r.blair@gax.com |
| Sent: | Wednesday, January 6, 2021 8:06 PM |
| To: | rob@epik.com |
| Subject: | Re: Interested in the domain: lambo.com |
| Attachments: | publickey - EmailAddress(s=r.blair@gax.com) - 0x86811FBC.asc |

$888,888

Sent from ProtonMail mobile

-------- Original Message --------
On Jan 5, 2021, 3:37 PM, Rob Monster < rob@epik.com> wrote:

Hi Richard,

Happy New Year!

Nice opening offer here. What is the reserve?

Regards,
Rob

SER-103. Despite his claims to the contrary, the admissible evidence makes it is indisputably clear that Mr. Blair is not "commonly known" as Lambo.

Even assuming for the sake of argument that Mr. Blair adopted the nickname "Lambo" and, as a consequence, others began referring to him by that nickname, he only began using "Lambo" as a nickname *after* purchasing the <lambo.com> domain. *Contra* Open. Br. at 22; *see also* 2-ER-22–24. The ACPA was created to prevent users from registering well-known marks in which they were not the rightful owners. *See DSPT Intern.*, 624 F.2d at 1219-20. It would be counter-

17

intuitive to allow users to gain rights to protected domain names on the basis that they began referring to themselves as the domain name after purchase. Indeed, such an argument would create a massive loophole in the law and allow cybersquatters to evade the ACPA by simply creating online monikers based on the domains they have registered after the fact, as Mr. Blair attempts to do here. Indeed, the drafters of the ACPA anticipated such bad faith attempts to circumvent the law and explicitly ruled out such transparent attempts to avoid liability. *See* H.R.Rep. No. 106–412, 10 ("This factor is not intended to suggest that domain name registrants may evade the application of this act by merely adopting Exxon, Ford, Bugs Bunny or other well-known marks as their nicknames."); *see also* 4 McCarthy on Trademarks and Unfair Competition § 25A:55.

Mr. Blair contends that the District Court erred by imposing a "timing requirement" on the adoption of his nickname "Lambo" and that "a pretextual adoption [of a nickname] may indeed arise before *or* after one's acquisition of a disputed domain name." Open. Br. at 32. Mr. Blair is correct. There is no timing requirement—pre-textual adoption of a nickname can occur either before or after domain registration. Here, the District Court concluded that Mr. Blair's adoption of the nickname "Lambo" *after* acquisition of the disputed domain name was pre-textual and that he failed to offer evidence sufficient to create a genuine issue of material fact as to the issue.

18

Mr. Blair contends that his late adoption of the nickname "Lambo" was not pre-textual, because after his registration of the domain, he was allegedly drawn to the name "Lambo" as a play on the word "Lamb," with an outlier generic aptitude and intelligence, hence "Lambo-O." (2-ER-31 ¶ 38). He goes on to claim that the name "Lambo" "resonated with him on a personal level and perfectly encapsulated his identity and ethos." 2-ER-31 ¶ 37. The District Court found this claim "perplexing." 1-ER-9. Such a characterization is not, as Mr. Blair contends, an improper "credibility determination." It is a fact. When viewed in a light most favorable to Mr. Blair, his explanation does not create a genuine issue of fact as to the motivations for his alleged adoption of the "Lambo" nickname. Mr. Blair's explanation supports just the opposite, i.e., that his adoption of the nickname was entirely pre-textual.

The Second Circuit's decision in *Sporty's Farms L.L.C. v. Sportsmans's Market, Inc.*, 202 F.3d 489 (2nd Cir. 2000), is instructive on this point. There, the domain name owner only began using the domain name as part of its name *after* acquisition of the domain, leading the Court to conclude that there existed "more than enough evidence in the record [] 'of bad faith intent to profit.'" *Id.* at 498. Mr. Blair contends that *Sporty's Farms* is irrelevant to the facts at issue here because the parties in that case were in direct competition. Open. Br. at 33. But the

19

relationship of the parties is not relevant to Factor II of the bad faith inquiry under the ACPA.

Because Mr. Blair is not commonly known as "Lambo," and because Mr. Blair's alleged adoption of the nickname "Lambo" occurred *after* he acquired the and was clearly motivated by a pre-textual attempt to avoid liability, this factor favors Lamborghini.

### 3. Mr. Blair has not made a bona fide use of the domain (Factors III and IV).

Mr. Blair has made no use, whatsoever, of the domain name, whether that be a bona fide commercial, noncommercial, or fair use. Mr. Blair does not address this factor in his petition, because he cannot. Indeed, Mr. Blair admitted that he "initially planned on developing a website at [<lambo.com>]" but "[t]hose plans were subsequently delayed and abandoned." 3-ER-370-371 ¶ 11. Accordingly, this factor, as the District Court correctly concluded, favors Lamborghini. *See Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1202-03 (9th Cir. 2009) (finding bad faith when, in part, the accused infringer did not have a bona fide use of the domain).

### 4. Mr. Blair had an intent to divert and disparage Lamborghini through its use of <lambo.com> (Factor V).

Mr. Blair demonstrated an intent to divert and disparage Lamborghini through his use of the <lambo.com> domain. It is undisputed that after Lamborghini filed its UDRP Complaint, visitors to the <lambo.com> domain were

20

redirected by Mr. Blair to a third-party website where he disparaged Lamborghini. SER-011 ¶ 14; SER-062; SER-064. On the third-party website, Mr. Blair stated, among other things, that he would "defend, defeat and humiliate" Lamborghini and accused Lamborghini of "THEFT." *See* SER-062; SER-064.

Mr. Blair contends that this factor should not favor Lamborghini, because there is no evidence to suggest that "[Mr.] Blair has ever sought to mislead consumers with regard to the site's sponsorship." Open. Br. at 35. But by registering a domain that Mr. Blair has already admitted is confusingly similar to the LAMBORGHINI mark, Mr. Blair has intentionally created a likelihood of confusion as to the sponsorship of the <lambo.com> domain. Then, taking advantage of that confusion, Mr. Blair used the domain in a way that undoubtedly disparaged Lamborghini's mark and good will by using it to redirect visitors to an alternate website on which he accused Lamborghini of "theft" and claimed that he intended to "humiliate" Lamborghini. These facts are undisputed. *See E. & J. Gallo Winery v. Spider Webs Ltd.*, 129 F. Supp. 2d 1033, 1045 (S.D. Tex. 2001) ("Spider Webs' use of the web site to criticize E. & J. Gallo Winery and to comment on the present litigation served only to disparage Gallo and diminish its goodwill.").

Mr. Blair also places much emphasis on the portion of the statute that requires "for commercial gain." Open. Br. at 35. But the statute applies to an intent

21

to divert consumers "either for commercial gain *or* with the intent to tarnish or disparage the mark." Mr. Blair also contends that there is no evidence that he in fact "intended to divert Lamborghini's consumers." Yet, the question remains: who was Mr. Blair's target audience if not potential Lamborghini customers confusingly drawn to the <lambo.com> domain?

Finally, Mr. Blair's argument that his actions cannot show bad faith, because they fall outside the scope of Factor V is entirely contradictory to his position that the factors are non-exclusive. *See* Open. Br. at 12-13, 35. Mr. Blair cannot ask the Court to look beyond the factors when it benefits him but then ask the Court to limit its analysis to the factors when it does not.

Because Mr. Blair used the domain <lambo.com> to disparage Lamborghini, this factor favors Lamborghini.[1]

### 5. Mr. Blair has offered to sell the <lambo.com> domain for exorbitant amounts of money (Factor VI).

Mr. Blair's listing of the domain <lambo.com> at increasingly exorbitant prices demonstrates Mr. Blair's bad intent to profit off of the <lambo.com> domain. It is undisputed that Mr. Blair bought the disputed domain on February 16, 2018, for $10,000. *See* SER-021. It is further undisputed that at least as early as

---

[1] It is also worth noting that, despite Blair's protests, the district court gave this factor little, if any, consideration. 1-ER-10-11. If anything, the district court did not give this factor enough weight.

August 6, 2020, Mr. Blair began listing the disputed domain for sale for a price of $1,129,298.00. SER-075. It is also undisputed that Mr. Blair has subsequently increased the sale price of the disputed domain, listing it for sale for $1.5 million on December 23, 2020, $3.3 million on January 27, 2021, $12 million on September 23, 2021, $50 million on August 11, 2022, and $75 million on September 7, 2023. SER077-092. Prior to Lamborghini initiating the domain transfer, Mr. Blair continued to list the disputed domain for $75 million.

Not only has Mr. Blair listed the disputed domain for sale, he has entertained numerous offers from others seeking to buy it. See SER-012 ¶¶ 24-26. For example, in an email dated January 6, 2021, in response to an opening offer of $100,000, Mr. Blair notes that the "reserve" price is $888,888. *Id*. ¶ 24. In email correspondence from September 20, 2021, Mr. Blair tells a prospective buyer that the "asking price for Lambo.com is USD $12m." *Id*. ¶ 25. And on April 17, 2023, in responding to an offer to buy the domain for $50,000,000, Mr. Blair tells the prospective buyer that he "would be agreeable to a near all cash offer if ready to close." *Id*. ¶ 26.

Mr. Blair argues that his offer for sale of <lambo.com> cannot constitute evidence of his bad faith, because he never intended to sell the domain. Open. Br. at 38. Such uncorroborated statements cannot be used to overcome a motion for summary judgment, because they fail to create a "genuine" dispute of material fact.

23

In order for a dispute to be genuine, there must be sufficient evidence that a reasonable fact finder could find for the non-moving party. *See Anderson*, 477 U.S. at 248-49. Here, there is overwhelming evidence that Mr. Blair offered the domain <lambo.com> for sale at high prices and engaged with potential buyers of the domain intending to profit off of the LAMBORGHINI mark. *See* SER-012 ¶¶ 23-26. A reasonable fact-finder could not find otherwise.

Mr. Blair's self-serving statement is further contradicted by the fact that anyone could have purchased the <lambo.com> domain through the "Buy Now" feature so long as they met Mr. Blair's quoted price. SER-092. For example, in one email where Mr. Blair responds to a potential purchaser of the <lambo.com> domain, Mr. Blair notes that "Price as shown, if you are interested you can use the buy now button and checkout via escrow.com." *See* SER-037-038. Mr. Blair cannot seriously argue that he never intended to sell the domain when he made it possible for and instructed potential buyers to purchase the domain through the click of a button.

Further, Mr. Blair attempts to cast doubt on his intentions by arguing that he "has never offered to sell the domain name to Lamborghini." Open. Br. at 38. But this court has explicitly held that such evidence is not required. *See DSPT Int'l*, 624 F.3d at 1221 (noting that it is "bad faith to hold a domain name for ransom" and that "intent can be infer[red]" even without "direct evidence of an explicit

24

offer to sell the domain"). Here, even though there was not a direct offer to sell to Lamborghini, Mr. Blair posted the domain for sale and made it such that anyone could purchase it at any time. As the lower court aptly noted, Mr. Blair's actions were "indirectly extortionate." 1-ER-13.

Mr. Blair attempts to frame the District Court's decision as an improper credibility determination, because it ignored his claim that he placed the domain for sale at high prices in order to deter purchasers. Open. Br. at 38-39. That is not so. In order for there to be genuine issue of material fact, the court must determine whether a reasonable fact-finder could rely on specific evidence. *See Anderson*, 477 U.S. at 248-49. As the court reasonably noted, Mr. Blair has provided no explanation on how listing the domain for sale would discourage people from believing that the domain is for sale. 1-ER-12-13. And, if it were truly the case that the domain was not for sale, why did Mr. Blair respond to potential customers and provide instructions as to how they could complete purchase? The lower court was correct to conclude that no reasonable juror could find for Mr. Blair given the extensive evidence showing that Mr. Blair placed the domain for sale and entertained potential buyers.

Mr. Blair likewise contends that the evidence supports his claim that he plans to develop <lambo.com>. Open. Br. at 27. This is untrue. Mr. Blair explicitly stated in his Complaint that he *abandoned* any attempts to develop <lambo.com>.

25

*See* 3-ER-370-371 at ¶ 11. Under Ninth Circuit precedent, such statements serve as judicial admissions. *See Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859-60 (9th Cir. 1995). Mr. Blair cannot now walk his statement back now that it no longer serves him.

Finally, Mr. Blair's cited case law is inapposite. For example, in *Nu Pagamentos S.A.–Instituição de Pagamento v. Hudson*, the court found that there was a genuine dispute of material fact because the domain owner *quoted* an exorbitant price. No. 2:21-cv-69-RWS, 2023 WL 2377641, at *13 (N.D. Ga. Feb. 22, 2023). In comparison, Mr. Blair did more than quote the price, he set up a website that would allow anyone to actually purchase it at the price set. *See* SER-092. Similarly, in *Black v. Irving Materials, Inc.*, the court relied on the fact that the domain owner made *bona fide* use of the domain. *See* No. 17-cv-06734-LHK, 2019 WL 1995342, at *10 (N.D. Cal. May 6, 2019). In comparison, Mr. Blair has made no *bona fide* use of the <lambo.com> domain.

Because Mr. Blair offered and attempted to sell the <lambo.com> domain at exorbitant prices, this factor weighs in favor of Lamborghini.

### 6. Mr. Blair's other domain names may also show signs of cybersquatting (Factor VIII).

While not dispositive to this Petition, Mr. Blair's history of domain purchasing shows potential instances of further cybersquatting. For example, Mr.

Blair also owns the domain <pharmacore.com>, which is a registered trademark. *See* SER-007-008. While concluding that this factor weighed in Mr. Blair's favor, the District Court concluded that a lack of cybersquatting history is not enough in itself to "absolve [Mr. Blair] of an ill-intent to profit from Lamborghini's mark." 1-ER-15.

### 7. Lamborghini's mark is distinctive and famous (Factor IX).

One of the most important factors is Factor IX, which looks at the extent to which the mark incorporated in the domain name registration is or is not distinctive and famous. Courts have repeatedly held that the LAMBORGHINI mark is famous and distinctive. *See Garcia*, 2020 WL 2048165 at *5 ("Lamborghini has used the Marks exclusively and continuously for over fifty years, has never abandoned them and has spent millions of dollars in advertising and promoting the Marks throughout the United States and the world. As a result, the Marks are world famous and the consuming public exclusively associates the Marks with Lamborghini."); *Audi AG*, 2019 WL 1951166 at *4; *Volkswagen*, 2021 WL 8444641 at *2, *report and recommendation adopted*, 2021 WL 8445261.

Mr. Blair does not dispute that LAMBORGHINI is a famous and distinctive mark. Open. Br. at 39. Rather, Mr. Blair argues that the focus of this element of the statute should be on the term "Lambo," rather than "LAMBORGHINI." Open. Br. at 39-40. But that is not the law. The operating mark is "LAMBORGHINI," which

27

is the mark the court should look at. *See Super-Krete Int'l., Inc. v. Sadleir*, 712 F. Supp. 2d 1023, 1034 (C.D. Cal. 2010) (looking at the use of the senior mark); *see also* 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25A:62 ("[The] more distinctive the senior mark, the greater the chance that there will be a likelihood of confusion."). Accordingly, the question is whether "Lambo" is confusingly similar to "LAMBORGHINI." Mr. Blair has already admitted it is. *See* SER-124 at 18:2-7. The inquiry should stop there.

But Mr. Blair also argues that there cannot possibly be bad intent on his part because, according to him, "Lambo" "is a generic term used by hundreds of non-party businesses in the United States and around the world in connection with a vast array of goods and services." Open. Br. at 16-17, 39-40. To be clear, Mr. Blair admits that LAMBORGHINI is a famous trademark. Mr. Blair admits that "Lambo" is confusingly similar to the LAMBORGHINI mark. SER-124 at 18:2-7. And it is undisputed that "Lambo" is a common shorthand for LAMBORGHINI. In essence, Mr. Blair argues that Lamborghini's trademark rights should not matter because other individuals may use the term "Lambo" in ways that do not infringe upon Lamborghini's trademark rights. Open. Br. at 16-17. The actions of third

parties that are not involved in this litigation have no bearing on *Mr. Blair*'s actions.[2]

Nor does Mr. Blair's cited case law help him. *Contra* Open. Br. at 18. In *Calista Enters. Ltd. v. Tenza Trading Ltd*., the court noted that there were issues of validity with respect to the trademark "PORNTUBE" because the mark itself was generic, and validity is what the cybersquatting claim would turn on. *See* 43 F. Supp. 3d 1099, 1132 (D. Ore. 2014). There are no such validity concerns or arguments here, and Mr. Blair is not arguing that the mark LAMBORGHINI is generic. In *Cello Holdings, L.L.C. v. Lawrence-Dahl Cos.*, the court found that there was a material question of fact because the "mark ['CELLO'] is a weak one" and a reasonable factfinder "could conclude that the mark 'cello' is not distinctive." 89 F. Supp. 2d 464, 473 (S.D.N.Y. 2000). In comparison, no one is arguing that LAMBORGHINI is a weak mark or that it is not distinctive.

---

[2] It is also worth noting that the evidence Mr. Blair cites is inadmissible hearsay. Mr. Blair has submitted no authentication for the materials, nor has Mr. Blair produced any such materials in this case except for the summary judgment filings in this case. Open. Br. at 16-17. Thus, it would be improper to rely on them for the purposes of summary judgment. *See* FRCP 37(c) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

Because Mr. Blair admits that LAMBORGHINI is a famous and distinctive mark, and that "Lambo" is confusingly similar to LAMBORGHINI, this factor weighs in favor of Lamborghini.

> **8.    Taken together, the facts of this case lead to the only conclusion that Mr. Blair acted in bad faith through his ownership and offer for sale of <lambo.com>.**

When looking at the totality of the circumstances, the evidence is clear that Mr. Blair acted in bad faith through his ownership and offer for sale of <lambo.com>. Mr. Blair argues that having some factors in his favor should weigh against summary judgment. *See* Open. Br. at 15.  But courts may conclude that a domain owner has engaged in bad faith on summary judgment despite the statutory factors being mixed. *See Lahoti*, 586 F.3d at  1202 (noting that the factors are "permissive" rather than mandatory); *see also Digby Adler Grp. LLC v. Image Rent a Car, Inc.*, 79 F. Supp. 3d 1095, 1102-04 (N.D. Cal. 2015) (granting summary judgment finding bad faith despite factors weighing in favor of both parties when the facts of the case demonstrated bad faith). In this case, it is undisputed that Mr. Blair has offered the website for sale at increasingly high prices with an option to purchase the domain on demand. It is undisputed that Mr. Blair does not have legal title to the name "Lambo." It is undisputed that Mr. Blair has used the domain to state his intent to "humiliate" Lamborghini. And it is irrefutable that Mr. Blair is not commonly known as "Lambo" and that his

30

adoption of the nickname "Lambo" was entirely pre-textual. Accordingly, Mr.

Blair's actions demonstrate nothing less than a bad faith intent to profit of off the

LAMBORGHINI mark through his registration of the <lambo.com> domain.

### B. The District Court's analysis and judgment was proper.

In granting Lamborghini's Motion for Summary Judgment, the District

Court properly considered the nine non-exhaustive factors identified by the

relevant statute and determined, based on the totality of the circumstances, that a

reasonable fact-finder could not find in Mr. Blair's favor. Mr. Blair identified two

complaints with the District Court's analysis: (1) that the District Court rigidly

used the nine factor analysis and (2) that the District Court improperly made

credibility determinations. Both arguments are frivolous. Open. Br. at 12-13.

First, the District Court's use of the nine statutory factors was not improper.

Indeed, this Court has affirmed the use of the nine statutory factors to determine

bad faith in motions for summary judgment for ACPA cases. *See, e.g., Aviva USA*

*Corp. v. Vazirani*, 632 Fed. Appx. 885, 887-89 (9th Cir. 2015). Mr. Blair argues

that the District Court's analysis was not sufficient, because it should have

considered the unique facts of this case. Open. Br. at 12-13. But Mr. Blair has not

proffered a single reason why the nine factors were inadequate to assess the facts

of this case, nor has Mr. Blair offered a single piece of evidence that the court

failed to evaluate. Moreover, the court specifically stated that its analysis involved

31

looking at the "unique circumstances of the case." *See* 1-ER-8. The court evaluated the specific facts of the case in deciding the grant Lamborghini's Motion, and Mr. Blair's argument otherwise is baseless.

Mr. Blair's further argument that the district made improper credibility determinations is likewise flawed. Open. Br. at 11. Under the summary judgment standard, the court must determine whether a reasonable fact-finder could rely on the proffered evidence or whether certain inferences are reasonable. *Pleasant v. Miranda*, No. 21-55784, 2022 WL 2304221, at *1 (9th Cir. Jun. 27, 2022). That the court found that the evidence Mr. Blair raised did not create a genuine issue of material fact sufficient to defeat Lamborghini's summary judgment motion was not improper. *See id.* The court merely did what it was tasked to do.

Notably, Mr. Blair makes multiple references to a jury in his Opening Brief. *See, e.g.*, Open. Br. at 3, 15-16. This case was slated for a bench trial, not a jury trial. While not dispositive to this motion, to the extent Mr. Blair alleges that the District Court made any credibility determinations (which Lamborghini disputes), other Circuits have allowed such determinations in similar situations. *See e.g., Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123–24 (5th Cir. 1978) ("If decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend

on inferences to be drawn from what has been incontrovertibly proved."); *U.S. Fed. & Guar. Co. v. Planters Bank & Tr. Co.*, 77 F.3d 863, 866 (5th Cir. 1996) ("[Prior case law has] established that even at the summary judgment stage a judge in a bench trial has the limited discretion to decide that the same evidence, presented to him or her as trier of fact in a plenary trial, could not possibly lead to a different result."); *Useden v. Acker*, 947 F.2d 1563, 1572 (11th Cir. 1991) ("These circumstances may suggest that the judge is in an enhanced position to draw inferences and resolve the action without resorting to the expense of trial.").

## CONCLUSION

For the foregoing reasons, the District Court's grant of summary judgment should be affirmed.


Date: May 2, 2025

Respectfully submitted,

*s/ Nicholas Nowak*

LAUREN WATT
NICHOLAS NOWAK
STERNE KESSLER GOLDSTEIN & FOX
PLLC
1101 K STREET, NW
FLOOR 10
WASHINGTON, DC 20005
(202) 371-2600

*COUNSEL FOR DEFENDANT-APPELLEE
AUTOMOBILI LAMBORGHINI SPA.*

33

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 24-6839

I am the attorney or self-represented party.

**This brief contains** 7,626 **words,** including 169 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

　☐ it is a joint brief submitted by separately represented parties.

　☐ a party or parties are filing a single brief in response to multiple briefs.

　☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated　　　　　　.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Nicholas Nowak **Date** 5/2/2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*