**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 9 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RICHARD BLAIR, <br><br> Plaintiff-ctr-defendant - Appellant, <br><br> v. <br><br> AUTOMOBILI LAMBORGHINI S.P.A., <br><br> Defendant-ctr-claimant - Appellee. | No. 24-6839 <br><br> D.C. No. 2:22-cv-01439-ROS <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, District Judge, Presiding

Submitted October 7, 2025**
Las Vegas, Nevada

Before: BENNETT, SANCHEZ, and H.A. THOMAS, Circuit Judges.

Richard Blair appeals the district court's grant of summary judgment to Automobili Lamborghini S.p.A. (Lamborghini) in Blair's action seeking a declaratory judgment that his use of the internet domain name <lambo.com> is not

---

\*     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*    The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

an unlawful use of Lamborghini's trademark under the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d). We have jurisdiction under 28 U.S.C. § 1291. We review a district court's grant of summary judgment de novo. *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 861 (9th Cir. 2017). We affirm.

The ACPA "prohibits 'cybersquatters' from registering internet domain names that are identical or confusingly similar to registered service marks and trademarks." *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1026 (9th Cir. 2011). Under Section 1125(d)(1)(A) of the ACPA, "[a] person shall be liable in a civil action by the owner of a mark" if that person (1) "has a bad faith intent to profit from that mark" and (2) "registers, traffics in, or uses a domain name that" is "identical or confusingly similar to" a "famous mark that is famous at the time of registration of the domain name." 15 U.S.C. § 1125(d)(1)(A); *see also DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218–19 (9th Cir. 2010). The sole issue before us is whether Blair had the requisite bad faith intent.

When determining whether a defendant to a cybersquatting claim exhibited a bad faith intent to profit from a mark, we may consider a set of nine non-exhaustive statutory factors. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(I)–(IX) (listing factors). But "the most important grounds for finding bad faith are 'the unique circumstances of the case, which do not fit neatly into the specific factors

enumerated by Congress.'" *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 946–47 (9th Cir. 2002) (quoting *Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 268 (4th Cir. 2001)).

The district court correctly found that the first four statutory factors weigh in Lamborghini's favor. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(I)–(IV). As to the first factor—"the trademark or other intellectual property rights of the person, if any, in the domain name"—Blair has conceded that he has no intellectual property rights in the word "lambo." *Id.* § 1125(d)(1)(B)(i)(I). As to the second factor, whether the domain name is "commonly used to identify" Blair, Blair concedes that he adopted "Lambo" as a personal moniker only after acquiring <lambo.com>. *Id.* § 1125(d)(1)(B)(i)(II); *see Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 499 (2d Cir. 2000) (adopting a name after the domain name's registration not probative of good faith). The third factor also favors Lamborghini, as Blair's limited development of <lambo.com> does not show a "prior use" of the domain name "in connection with the bona fide offering of any goods or services." *Id.* § 1125(d)(1)(B)(i)(III). For the same reason, factor four, "bona fide noncommercial or fair use of the mark," favors Lamborghini as well. *Id.* § 1125(d)(1)(B)(i)(IV).

The district court also correctly found that factors six and nine weigh in Lamborghini's favor. As to factor six—attempting to "transfer, sell, or otherwise

assign the domain name . . . for financial gain without having used" or intended to use it—although Blair had made only limited use of <lambo.com>, he listed the domain for sale at $75,000,000, a price the district court rightly described as "indirectly extortionate." *Id.* § 1125(d)(1)(B)(i)(VI); *see DSPT Int'l, Inc.*, 624 F.3d at 1221 (explaining that holding a "domain name for ransom" can indicate bad faith). As to the ninth factor—whether the mark is "distinctive" or "famous"— "[t]here is no doubt" that, as the district court held, "the LAMBORGHINI mark is distinctive and famous as defined in 15 U.S.C. § 1125(c)" since "it is widely recognized by the general public in association with the world-famous automobiles it manufactures." *See* 15 U.S.C. § 1125(d)(1)(B)(i)(IX).

Factors seven and eight, on the other hand, favor Blair. Lamborghini does not claim that Blair provided "material and misleading false contact information" when registering <lambo.com>, nor does it contest that he provided "accurate contact information" throughout his ownership of the domain name. *Id.* § 1125(d)(1)(B)(i)(VII). And the record does not demonstrate that Blair has a history of cybersquatting, for instance by holding "multiple domain names" that are "identical or confusingly similar" to or "dilutive" of other marks. *Id.* § 1125(d)(1)(B)(i)(VIII). We also assume, without deciding, that factor five— relating to "intent to divert consumers from the mark owner's online location"— weighs in Blair's favor. *Id.* § 1125(d)(1)(B)(i)(V).

Taken on balance, those few factors that favor Blair do not outweigh those that favor Lamborghini. The district court thus correctly concluded that Blair exhibited a "bad faith intent to profit" from Lamborghini's mark for the purposes of Section 1125(d)(1)(A)(i) of the ACPA and did not err in granting summary judgment to Lamborghini.

**AFFIRMED.**